# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HENKY BUDIONO, | No. 4:19-CV-01635 |
| Petitioner. | (Judge Brann) |
| v. | |
| WILLIAM BARR, | |
| Respondent. | |

## MEMORANDUM OPINION

### OCTOBER 29, 2019

## I. BACKGROUND

Henky Budiono, a citizen of Indonesia, was lawfully admitted to the United States on a travel visa in April 2000.[1] In 2002, Budiono filed an application for asylum and withholding of removal pursuant to the United Nations Convention Against Torture.[2] In 2007, an immigration judge ("IJ") considered Budiono's application and determined that it was frivolous and false; the IJ therefore denied the application and ordered Budiono removed from the country.[3] The Board of Immigration Appeals ("BIA") concluded that the IJ failed to sufficiently support his factual determinations, and therefore remanded the matter so that the IJ could "make specific findings with respect to the credibility and the merits of [Budiono's] claim

---

[1] Doc. 10-1 at 3-4.

[2] *Id.* at 4.

[3] *Id.* at 5-9.

for withholding of removal."[4] In 2010, the IJ held a second hearing related to Budiono's claim for withholding of removal.[5] Budiono did not attend the hearing, and the IJ therefore held that Budiono had waived his claim for relief from removal, and again ordered Budiono removed from the country.[6]

Budiono continued to reside in the United States until he was detained by federal authorities on July 16, 2019.[7] Budiono was then transferred to the Pike County Correctional Facility, which is located within the Middle District of Pennsylvania.[8] On September 15, 2019, Budiono filed a 28 U.S.C. § 2241 petition with this Court, along with a request for an emergency temporary restraining order and stay of removal.[9] The Court received the petition on September 20, 2019, and immediately stayed Budiono's deportation and directed Respondent to show cause as to why Budiono's petition should not be granted.[10]

In his petition, Budiono first asserts that removing him from the country without providing sufficient time to file a motion to reopen his removal proceedings would violate his due process rights.[11] Second, Budiono contends that this Court has

---

[4] *Id.* at 15; *see id.* at 13-15.

[5] *Id.* at 16.

[6] *Id.*

[7] Doc. 1 at 20.

[8] *Id.*

[9] Docs. 1, 2.

[10] Doc. 6.

[11] Doc. 1 at 17-18, 21-23, 27-29.

jurisdiction over the § 2241 petition because any statute that purports to divest the Court of jurisdiction to consider a petition for a writ of habeas corpus would violate the Suspension Clause of the United States Constitution.[12] Finally, Budiono argues that his continued detention without a bond hearing violates his due process rights.[13]

Respondent in turn asserts that Budiono's petition should be dismissed and denied because (1) this Court lacks jurisdiction to consider a challenge to Budiono's order of removal, (2) the Suspension Clause is not implicated in these circumstances, and (3) Budiono is likely to be removed from the country shortly, meaning that any challenge to his continued detention should be denied.[14] For the reasons discussed below, the Court will dismiss in part and deny in part the petition.

## II. DISCUSSION

The dispute between the parties centers around two issues. First, the parties dispute whether this Court has jurisdiction to consider Budiono's request to stay removal proceedings so that he may file a motion to reopen his removal proceeding. Second, the parties dispute whether Budiono is being unlawfully detained without a bond hearing. The Court will address these issues in turn.

---

[12] *Id.* at 23-25.

[13] Doc. 2 at 17-18.

[14] Doc. 10.

## A. Jurisdictional Issues

With respect to the jurisdictional dispute, "[f]ederal courts are not courts of general jurisdiction" and "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress."[15] In that respect, the REAL ID Act of 2005 "made petitions for review filed with the court of appeals the 'sole and exclusive means for judicial review of' most orders of removal, . . . [and] expressly eliminated district courts' habeas jurisdiction over removal orders."[16] "Moreover, a petition for review filed in the appropriate court of appeals 'is the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment . . . .'"[17] The relevant statute further provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."[18]

Here, Budiono primarily challenges the order of removal and its execution by the Government.[19] Thus, on its face, the statutory language referenced above

---

[15] *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).

[16] *Jordon v. Attorney Gen. of U.S.*, 424 F.3d 320, 326 (3d Cir. 2005) (quoting 8 U.S.C. § 1252(a)(5)).

[17] *Toussaint v. Attorney Gen. of U.S.*, 455 F.3d 409, 412 n.3 (3d Cir. 2006) (quoting 8 U.S.C. § 1252(a)(4)).

[18] 8 U.S.C. § 1252(g).

[19] Doc. 2 at 16-17.

appears to divest this Court of jurisdiction to consider Budiono's petition as it relates to a stay of removal. Nevertheless, the Suspension Clause of the United States Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."[20] Consequently, the Court must determine whether the jurisdiction stripping provisions of 8 U.S.C. § 1252, as applied to Budiono, violates that clause of the Constitution.

To determine whether § 1252 violates the Suspense Clause, this Court must proceed "through the two-step analysis that the Supreme Court announced in *Boumediene v. Bush*, 553 U.S. 723 (2008)."[21] "[This Court must] first determine 'whether a given habeas petitioner is prohibited from invoking the Suspension Clause due to some attribute of the petitioner or to the circumstances surrounding his arrest or detention.'"[22] "Then, if the petitioner is not prohibited from invoking the Suspension Clause, [this Court must] turn to the question whether the substitute for habeas is adequate and effective to test the legality of the petitioner's detention (or removal)."[23]

---

[20] U.S. Const. art I, § 9, cl. 2.

[21] *Osorio-Martinez v. Attorney Gen. United States of Am.*, 893 F.3d 153, 166 (3d Cir. 2018).

[22] *Id.* (internal quotation marks omitted).

[23] *Id.* (internal quotation marks omitted).

### 1. Whether Budiono may Invoke the Suspension Clause

As to whether Budiono is prohibited from invoking the Suspension Clause, the Government sets forth two arguments that the Court may quickly dispose of. First, the Government contends, in part, that the Suspension Clause is not implicated because Budiono does not seek true habeas relief, in that he does not seek release from custody.[24] The Government, however, misses the mark as to what may constitute habeas relief. Although petitioners will often seek release from custody, "[t]he sole inquiry for habeas jurisdiction is whether granting the petition as to the claim would necessarily imply a change to the fact, duration, or execution of the petitioner's sentence."[25] As this language suggests, discharge from custody is not the only form of relief that a habeas petitioner may seek; rather, a petitioner may seek any relief that may alter the fact or execution of his detention. This conclusion resonates with particular force in the immigration context, where petitioners are generally confined in the district court to seek relief that would *not* necessarily imply a discharge—conditional or otherwise—from custody.[26]

---

[24] Doc. 10 at 32-35.

[25] *Velazquez v. Superintendent Fayette SCI*, 937 F.3d 151, 157 (3d Cir. 2019).

[26] The Government cites to two Supreme Court cases for the notion that injunctive relief is not authorized in a § 2241 petition, but both are easily distinguished. In *Munaf v. Green*, 553 U.S. 674 (2008), the Supreme Court noted that habeas relief was inappropriate because petitioners did not want release from custody but, rather, wished for the Government to shelter them from prosecution by a foreign sovereign. *Id.* at 693-94. Here, however, Budiono does ultimately seek release from federal custody. And in *Heikkila v. Barber*, 345 U.S. 229 (1953), the Supreme Court addressed whether an individual may pursue relief from deportation through means other than a habeas petition, but did not directly address whether a petitioner may seek injunctive relief through a habeas petition. In contrast, several courts have noted that

For example, in *Zadvydas v. Davis*, the United States Supreme Court reviewed recent amendments to Title 8 and determined that, although the amendments stripped district courts of jurisdiction to consider most immigration decisions in § 2241 proceedings, they did not divest courts of jurisdiction to consider "challenges to post removal detention."[27] Thus, one of the few areas in which immigration detainees may seek habeas relief is by seeking an order from a district court directing an IJ to hold a bond hearing to consider release pending removal from the United States. Of course, the IJ may ultimately deny bond and, thus, the detainee may remain in custody despite the relief granted in his § 2241 petition. And in *Faruqi v. Department of Homeland Security*, the United States Court of Appeals for the Ninth Circuit reiterated its stance that, although Title 8 generally divested district courts of jurisdiction to review removal orders and prohibits courts from "enjoin[ing] the removal of any alien pursuant to a final order of removal," those statutes do not prohibit courts from considering § 2241 petitions that seek "interim injunctive relief" that would prevent a petitioner's immediate removal from the country pending further immigration proceedings.[28]

---

petitioners may seek injunctive relief through a § 2241 petition. *See, e.g., Bonneau v. Salazar*, 754 F. App'x 624, 624 (9th Cir. 2019); *Boling-Bey v. U.S. Parole Comm'n*, 559 F.3d 1149, 1151 n.1 (10th Cir. 1009); *Sean B. v. McAleenan*, No. 19-cv-10529, 2019 WL 4165309 at *10-11 (D.N.J. Sept. 3, 2019). *But see Hamama v. Adducci*, 912 F.3d 869, 875-76 (6th Cir. 2018) (rejecting contention that stay of removal to file motion to reopen removal proceeding falls within the core of habeas relief).

[27] 533 U.S. 678, 687-88 (2001).

[28] 360 F.3d 985, 988 (9th Cir. 2004).

Here, Budiono seeks two forms of relief. First, Budiono asserts that his continued detention violates his due process rights and, thus, seeks relief under *Zadvydas*.[29] This, of course, clearly falls within the core of habeas proceedings, as defined by the Supreme Court. Second, Budiono seeks injunctive relief prohibiting his removal from the country so that he may file a petition to reopen his removal proceedings—and thereafter demonstrate to an IJ that he would be subject to persecution or torture if returned to Indonesia.[30] If the Court granted the requested relief, it carries with it the concomitant possibility that Budiono would be released from custody and permitted to stay within the United States. Although perhaps on the periphery of appropriate habeas relief, the Court concludes that such relief falls within the scope of a proper § 2241 petition.[31]

Second, citing *Qureshi v. Admin. Appeals Office (AAO) of U.S. Citizenship & Immigration Servs. (USCIS)*, 408 F. App'x 611 (3d Cir. 2010), and other cases, the Government contends that Budiono may not pursue relief through a § 2241 petition because he "has already had an opportunity to obtain judicial review of his final order of removal."[32] However, *Qureshi* addressed the second prong of the Suspension Clause inquiry—whether Congress has created adequate substitute

---

[29] Doc. 2 at 17-18.

[30] *Id.* at 16-17.

[31] *C.f. Sean B.*, 2019 WL 4165309 at *14-15 (granting motion for stay of removal in § 2241 proceeding); *Sukwanputra v. Barr*, No. 19-cv-3965, 2019 WL 4546933 (E.D. Pa. Sept. 19, 2019) (same).

[32] Doc, 2 at 22; *see id.* at 22-27.

8

procedures for habeas petitions—and did not address whether the petitioner was precluded from filing a habeas petition.[33] More fundamentally, however, Budiono has not yet had the opportunity—an opportunity to which he is guaranteed by statute[34]—to seek reopening of his case based on significantly changed circumstances that may render his removal improper. Thus, he has not obtained the full judicial review to which he is entitled.

Turning then to the basic inquiry of whether Budiono is prohibited from invoking the Suspension Clause, the Court concludes that he is not. The Supreme Court has set forth three relevant factors to evaluate whether a petitioner is prohibited from invoking the Suspension Clause: "(1) the citizenship and status of the detainee and the adequacy of the process through which that status determination was made; (2) the nature of the sites where apprehension and then detention took place; and (3) the practical obstacles inherent in resolving the prisoner's entitlement to the writ."[35]

As to the first factor, although Budiono is not a citizen, it is apparent that he has "develop[ed] the ties that go with permanent residence [such that] his constitutional status [has] change[d]" and he is now entitled to all relevant

---

[33] *Qureshi*, 408 F. App'x at 614-15. The Government further contends that Budiono does not have a due process right to seek discretionary reopening of his proceedings. (Doc. 10 at 24-25). Regardless of whether this proposition is accurate, it is not disputed that Budiono has a statutory right to file a motion to reopen and have that motion decided by the BIA. *See* 8 U.S.C. § 1229a(c)(7). Budiono therefore has—at a minimum—a due process right to *file* his motion to open with the BIA.

[34] 8 U.S.C. § 1229a(c)(7).

[35] *Boumediene*, 553 U.S. at 766.

constitutional protections.[36] Budiono arrived in the United States voluntarily, has lived here for nearly two decades, has maintained steady employment during that time, has been an active and regular member of his church, and has a young daughter who is a United States citizen.[37] These connections are sufficient to establish Budiono within the "class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."[38]

With regard to the second factor, Budiono was apprehended, and is detained in, the United States.[39] Finally, "there [are no] serious practical obstacles to permitting habeas corpus proceedings besides the kind of 'incremental expenditure of resources' that the Supreme Court deemed not dispositive to the question of granting the writ."[40] Budiono meets all three factors set forth by the Supreme Court in *Boumediene*, and, consequently, he is entitled to all relevant constitutional protections, including those provided by the Suspension Clause.

---

[36] *Osorio-Martinez*, 893 F.3d at 168 (emphasis and internal quotation marks omitted).

[37] Doc. 1 at 9, 12, 19.

[38] *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990). *See United States v. Meza-Rodriguez*, 798 F.3d 664, 670-71 (7th Cir. 2015) (concluding that individual had formed substantial connections to the United States where he arrived voluntarily, resided in the country for approximately 20 years, attended public school and worked in the country, and had formed close relationships with family members and acquaintances). *See also Ibrahim v. Dep't of Homeland Sec.,* 669 F.3d 983, 996-97 (9th Cir. 2012); *Martinez-Aguero v. Gonzalez*, 459 F.3d 618, 625 (5th Cir. 2006).

[39] Doc. 1 at 20.

[40] *Osorio-Martinez*, 893 F.3d at 166 n.10 (quoting *Boumediene*, 553 U.S. at 769).

### 2. Whether Adequate Alternatives to a Habeas Petition Exist

The Court thus turns to the question of whether Congress has provided an adequate and effective substitute to test the legality of Budiono's removal from the country. The Government argues that Congress has provided an effective substitute, as Budiono may file a petition to reopen his removal proceedings, appeal any decision to the BIA, and then appeal any decision to the relevant court of appeals.[41] Although Budiono asserts that he would be unable to effectively prepare his motion to reopen if he were removed from the country, the Government contends that (1) the personal inability to use a remedy is irrelevant, (2) immigration courts have authority to stay removal pending consideration of a motion to reopen, and (3) the United States Court of Appeals for the Third Circuit may grant a stay of removal.[42] The Court agrees that, as applied to Budiono, Congress has provided adequate and effective substitutes to a writ of habeas corpus.[43]

First, as the Government correctly notes, Budiono may file a motion for a stay of removal with the BIA, which may then stay Budiono's removal pending

---

[41] Doc. 10 at 35-40.

[42] *Id.* at 36-40.

[43] Despite agreeing with the Government's proposed outcome, the Court rejects the assertion that "'it is the inefficacy of the remedy, not the personal inability to use it, that is determinative.'" (Doc. 10 at 36) (quoting *Cradle v. U.S. ex rel. Miner*, 290 F.3d 536, 538 (3d Cir. 2002)). The Third Circuit has made clear that the *Boumediene* analysis is an "as applied" analysis, meaning that courts must thoroughly examine the petitioner's individual circumstances to determine whether a statute—although generally constitutional—is nevertheless unconstitutional as applied to the petitioner. *Osorio-Martinez*, 893 F.3d at 178. This necessarily includes an analysis of Budiono's personal ability to access adequate substitutes to a writ of habeas corpus, rendering such access critical to any evaluation under the Suspension Clause.

adjudication of his motion to reopen.[44] If such a motion is denied, Budiono may, of course, appeal that decision to the Third Circuit. Moreover, the Third Circuit has, in at least one prior instance, stayed an order of removal before the BIA ruled on a motion to reopen and a motion for an emergency stay of removal.[45] These procedures provide adequate protection to Budiono, as he has alternative methods of avoiding removal pending the filing of a motion to reopen his removal proceedings.

Second, even if removed, the Third Circuit has held that individuals such as Budiono may pursue a motion to reopen from abroad.[46] Although Budiono cites what appear to be legitimate concerns for the safety of Christians in Indonesia,[47] there is no indication in the current record that Budiono cannot effectively litigate his motion to reopen from Indonesia. This differentiates Budiono's case from others where courts have found that threats to a petitioner render him unable to "effectively litigate an immigration appeal in the BIA or the Court of Appeals."[48]

---

[44] *See* BIA Practice Manual § 6.4(d)(i) (noting that "[a]n emergency stay request may be submitted only when an alien is in physical custody and is facing imminent removal" and the BIA "may [then] rule immediately on an 'emergency' stay request").

[45] *Khan v. Attorney Gen. of U.S.*, 691 F.3d 488, 492 (3d Cir. 2012).

[46] *Prestol Espinal v. Attorney Gen. of U.S.*, 653 F.3d 213, 224 (3d Cir. 2011). *Cf. Nken v. Holder*, 556 U.S. 418, 435 (2009) (holding that "Aliens who are removed may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal").

[47] *See* Doc. 1-5.

[48] *Sean B.*, 2019 WL 4165309 at *12.

For example, in *Sean B. v. McAleenan*, the petitioner had testified against a violent drug trafficking organization in Jamaica.[49] After he provided testimony against that organization, he had been directly threatened, "his sister's house was burned down, the house of his children's mother was bombed, six of his cousins ha[d] been murdered, and his father was forced to flee the country."[50] Collectively, this indicated to the district court that the petitioner would be forced into "hiding, and under a threat of death," which would preclude effective litigation of his immigration case.[51]

In *Compere v. Nielsen*, the petitioner faced a significant prospect that—upon being removed from the United States—he would be detained by the police or placed in temporary housing.[52] Additionally, the petitioner could not speak the local language and faced a significant security threat due to his familial relations.[53] Collectively, this convinced the court that the petitioner would effectively be unable to pursue his motion to reopen.[54] Similarly, in *Ibrahim v. Acosta*, petitioners faced a significant risk of harm if returned to Somalia, where Al-Shabaab's terror campaign had resulted in hundreds of deaths.[55] Petitioners had previously been

---

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] 358 F. Supp. 3d 170, 181-82 (D.N.H. 2019).

[53] *Id.* at 182.

[54] *Id.*

[55] No. 17-cv-24574, 2018 WL 582520 at *2 (S.D. Fla., Jan. 26, 2018).

13

subjected to an aborted deportation attempt, which resulted in "extraordinary public attention . . . [that] placed them in increased danger of being targeted by Al-Shabaab" due to the petitioners' perceived western ties.[56] These threats prevented petitioners from being able to effectively seek the reopening of their immigration cases.[57]

In contrast, here there is no indication of a specific threat to Budiono. There is no indication that Budiono must hide away in his home, unable to leave, contact the outside world, or travel freely. There is no indication that he cannot communicate with his fellow Indonesians, or that he does not have a support network in Indonesia that would be able to assist him in pursuing his motion to reopen. In short, there is simply no indication that Budiono cannot effectively pursue a motion to reopen from Indonesia. Because Budiono has adequate and effective alternatives to a writ of habeas corpus, as applied here, the Court holds that the jurisdiction stripping provisions of Title 8 do not violate the Suspension Clause. Consequently, the Court lacks jurisdiction to stay Budiono's removal.

### B. *Challenge to Continued Detention*

Lastly, Budiono asserts that his continued detention pending removal violates his due process rights.[58] The Government responds that Budiono's continued

---

[56] *Id.* at *3.

[57] *Id.* at *6.

[58] Doc. 2 at 17-18.

detention is lawful because he has been in custody for fewer than six months, and his removal is likely in the reasonably foreseeable future.[59]

Budiono is detained pursuant to 8 U.S.C. § 1231, which provides for detention "during" and "beyond" the "removal period."[60] The removal period begins on the latest of (i) the date the order of removal becomes administratively final; (ii) if the removal order is judicially reviewed and if a court orders a stay of the individual's removal, the date of the court's final order; and (iii) if the individual is detained or confined (except under an immigration process), the date he is released from detention or confinement.[61]

Detentions authorized by § 1231(a) are governed by the structure set forth in *Zadvydas*, where the Supreme Court held that the Government may not detain an individual who has been ordered removed for a period longer than "reasonably necessary to bring about that alien's removal."[62] Nevertheless, the Supreme Court established a "presumptively reasonable" six-month removal period.[63] After the expiration of the six-month period, the petitioner must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," in which case "the Government must respond with evidence

---

[59] Doc. 10 at 40-42.

[60] 8 U.S.C. §§ 1231(a)(2), (a)(6).

[61] 8 U.S.C. § 1231(a)(1)(B).

[62] 533 U.S. at 689.

[63] *Id.* at 701.

15

sufficient to rebut that showing."[64] If the Government fails to rebut that showing, a bond hearing may be required.

Here, Budiono's removal period began to run on June 16, 2019, the date that he was placed in federal custody.[65] Thus, approximately four months have run since Budiono was placed in federal custody, and the presumptively reasonable period of detention has not lapsed. Moreover, Budiono has not provided good reason to believe that his removal is not imminent. Budiono is therefore not entitled to relief under *Zadvydas* and, to the extent he challenges his continued detention while awaiting removal from the country, his § 2241 petition will be denied.

## III. CONCLUSION

For the foregoing reasons, Budiono's 28 U.S.C. § 2241 petition will be dismissed in part and denied in part. As a necessary corollary, the Court will lift the stay that it entered on September 20, 2019, that enjoined Budiono's removal from the United States.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[64] *Id.*

[65] Doc. 1 at 20.